# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | **CASE NO. 14-09404 BKT** |
| **CESAR IVAN VARGAS QUINONES** | **Chapter 11** |
| | **Adversary No. 16-00108** |
| **Debtor(s)** | |
| **CESAR IVAN VARGAS QUINONES** | |
| **Plaintiff** | |
| **vs.** | |
| **UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE; COMMONWEALTH OF PUERTO RICO, DEPARTMENT OF TREASURY OF PUERTO RICO; STATE INSURANCE FUND CORPORATION** | |
| | **FILED & ENTERED ON 12/29/2017** |
| **Defendant(s)** | |

## OPINION & ORDER

Before this Court is Co-Defendant, United States of America's (hereinafter, "IRS") *Motion for Partial Summary Judgment* [Dkt. No. 48], Debtor, Cesar I. Vargas Quiñónez's (hereinafter,

1

"Debtor") *Motion for Summary Judgment* [Dkt. No. 55], Co-Defendant, Treasury Department of the Commonwealth of Puerto Rico's (hereinafter, "Hacienda") *Motion Requesting Entry of Summary Judgment* [Dkt. No. 57], Hacienda's *Statement of Facts in Support of Motion for Summary Judgment* [Dkt. No. 58], Debtor's *Opposition to the United States' Motion for Partial Summary Judgment* [Dkt. No. 65], Debtor's *Opposition to the Puerto Rico Department of Treasury's Motion for Partial Summary Judgment* [Dkt. No. 68], IRS' *Opposition to Debtor's Motion for Summary Judgment and Reply on United States' Motion for Summary Judgment* [Dkt. No. 69], and Debtor's *Reply to the United States' Opposition to Debtor's Motion for Summary Judgment* [Dkt. No. 80].

## I.      Procedural Background

Debtor filed a chapter 11 voluntary petition for bankruptcy relief on November 14, 2014. [Dkt. No. 1, related legal case 14-09404]. Debtor owns in fee simple absolute six (6) parcels of real property (hereinafter "Real Properties") in and around the municipality of San Sebastian.  Debtor's Real Properties  are: Parcel No. 18455; Parcel No. 25537; Parcel No. 25539; Parcel No. 26489; Parcel No. 25538; and Parcel No. 24093. Debtor's Real Properties are encumbered by several liens in favor of the IRS and Hacienda (the "Defendants" collectively). Nevertheless, pursuant to a recent appraisal report, these Real Properties have a combined market value of $360,500.00. Of these six (6) Real Properties, all but one, Land Parcel No. 26489, are encumbered with cross-collateralized mortgages amounting to $355,000.00 in favor of creditor Condado 3, LLC, including principal balance and interest. The Debtor also holds chattel property (hereinafter "Chattel Property") with a

2

listed value of $33,765.00. Debtor seeks to strip down, strip off and void secured creditors' liens to the extent they are unsecured by equity in the underlying Real Properties.

Debtor owes Puerto Rico income taxes for tax years 2002, 2003, 2004 and 2005. Hacienda has filed tax liens upon all of Debtor's properties, the first of which was filed March 23, 2005. Debtor owes federal income taxes to the IRS corresponding to tax years 2002, 2003, 2005, 2006, 2007, 2008, 2009 and 2010, and federal insurance contributions act ("FICA") taxes for seven (7) quarterly periods between 2004 and 2006. The IRS has filed tax liens upon all of Debtor's properties, the first of which was filed May 14, 2007.

On December 5, 2014, IRS filed proof of claim 4-1 and filed Claim No. 4-2 on October 7, 2015, where the IRS claimed a total of $155,184.81 of which $109,017.55 was claimed as a secured debt. On February 20, 2015, the State Insurance Fund Corporation (hereinafter, "SIFC") filed a proof of claim, in which it claimed $2,108.46 as a general unsecured claim. [Claim No. 5]. On May 11, 2015, Hacienda filed a claim for a total amount of $242,287.68 of which $185,302.98 was claimed as a secured debt. [Claim No. 7-1]. The liens which encumber the Debtor's Real Properties were recorded pursuant to the Mortgage and Property Registry Act of 1979, P.R. Laws Ann. T. 30 §§2001 et seq. This statute was set aside and replaced by the Real Property Registry of Puerto Rico Act of 2015.

Debtor has yet to confirm a plan and the bankruptcy case is being held in abeyance until the present adversary procedure concludes. All three parties have stipulated to all the material facts

3

underlying the controversy, leaving the case ripe for decision as to the legal issues presented.

## II.     Standard of Review

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Under Fed.R.Civ.P., Rule 56(c), made applicable in bankruptcy by Fed.R.Bankr.P., Rule 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010).  See also, Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001).

A fact is deemed "material" if it could potentially affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact…if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the nonmoving party. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004). Therefore, summary judgment is

"inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Moreover, "[o]n issues where the non Movant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991). These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). The evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id.; See also Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir. 1993) (holding that the materials attached to the motion for summary judgment must be admissible and usable at trial). "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

## III.    Legal Analysis

### A.    Hacienda

Hacienda argues:

That its' lien was recorded on April 14, 2010. The debts for the periods of 2002, 2003, 2004 and 2005 included in the lien were not prescribed pursuant Section 6005 of the Puerto Rico Internal Revenue Code of 1994, as amended PRIRC of 2011 (Sec. 6010.05), as Plaintiff argues. The statute of limitation was interrupted by the lien over Plaintiff's properties. In addition, the lien and the other debts included in the Proof of Claim No. 7 are not time barred because the Plaintiff's bankruptcy filing on 2014 interrupted the prescription period.

*Motion Requesting Entry of Summary Judgment* [Dkt. No. 57, pgs. 5 & 6].

On the other hand, Debtor's *Motion for Summary Judgment* [Dkt. No. 55] requests this court to strip off all of Hacienda's liens. First, Debtor argues that Land Parcel No's. 18455, 25537, 25539, 25538 and 24093 have zero equity available to Co-Defendants, as their entire value is cross-collaterized and the mortgagor's lien primes over all other liens encumbered in these five properties.

Second, regarding land parcel No. 26489, which is the only one not encumbered by mortgage liens, Debtor requests this court to strip Hacienda's March 23, 2005 lien, as the lien's attachment period has elapsed. Furthermore, Debtor requests the court to strip all liens upon said Real Property according to Section 506 of the United States Bankruptcy Code (hereinafter, "Code"). In his motions to this court, Debtor pinpoints Real Property No. 26489's $25,000 market value and acknowledges its availability to Co-Defendants. Debtor argues:

> [P]er presentation order, Hacienda's lien primes over the IRS', as it was presented at the Property Registry on March 23, 2005, whereas the IRS' lien was presented two years later, on May 14, 2007. Nevertheless, in accordance to Article 144 of the Mortgage and Property Registry Act of Puerto Rico of 1979, the applicable law, the attachment of tax liens has a statute of limitation of six (6) years. P.R. Laws Ann. T. 30 §2468. In view that Hacienda's tax lien was recorded on May 23, 2005, the attachment of such lien expired on May 23, 2011. Therefore, **Hacienda's lien is no longer attached to Parcel No. 26489, making the IRS' lien the priming lien over such property**. [emphasis ours].

*Motion for Summary Judgment* [Dkt. No. 55, pg. 15].

Third, Debtor argues that Hacienda's claims are partially time bared, as they belong to tax years 2002, 2003, 2004 and 2005.

> [P]ursuant to Section 6010.05 of the Internal Revenues Code of 2011 (as well as Section 6005 of the Internal Revenues Code of 1994), any amount owed for taxes from the following years is time barred by statute of limitations: 2002, 2003, 2004, 2005, and 2006. 70. For such periods, between principal, interests, penalties, and surcharges, the Department for Treasury claims a total of $221,395.99. Consequently,

6

the Plaintiff requests that this Honorable Court, enters a judgment declaring that such part of Claim No. 7 is time barred, and that the $221,395.99 claimed for such periods is not a valid claim against the Debtor's estate.

*Complaint* [Dkt. No. 1, pg. 15].

Section 506 of the Code states that:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest […] is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property […] and is an unsecured claim to the extent that the value of such creditor's interest [.]

Moreover,

[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless – (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

As Debtor asserts, the process of voiding a lien is called "lien-stripping" and can be done in two different ways: strip down and/or strip off. A strip down "occurs when an under-secured creditor's lien is reduced to the remaining equity value in its collateral after superior liens are deducted; whereas, strip off occurs when a wholly under-secured creditor's lien is removed from the collateral in which there is no equity." In re Johnson, 386 B.R. 171, 173 (Bankr. W.D.Penn. 2008)

There being no equity available to Hacienda on Counts I, II, III, V and VI of the Complaint, this court GRANTS Debtor's request to strip off Hacienda's tax liens over Real Properties numbered 18455 (Count I), 25537 (Count II), 25539 (Count III), 25538 (Count V), and 24093 (Count VI).

Second, in order for Hacienda to able to collect from taxpayers, they must first asses a tax deficiency, for which Hacienda has four (4) years. See 13 L.P.R.A. § 33005. After the assessment, as per statutory law, Hacienda is granted a collection period "by means of demand for payment

proceedings or court proceedings, insofar these are filed within seven (7) years following the date of tax assessment." See 13 L.P.R.A. § 33006.

Pursuant to the aforementioned Internal Revenue Code sections and the undisputed facts set forth by the parties herein, Hacienda acted according to law and instituted a demand for payment proceeding within the statutorily prescribed seven-year term by filing a tax lien on March 23, 2005, on all the Real Properties to secure collection over those debts in the amount of $54,537.76, as proscribed by 30 LPRA §§ 1841-1847. No other lien was filed by Hacienda until 2010, by which time the SIFC and the IRS had already filed their liens respectively.

As the Debtor argues, when it comes to the attachment of liens to property, Puerto Rico's recording statute is a "race-notice" statute. See United States v. V & E Engineering, 189 F.2d 331, 334 (1st Cir. 1987). Pursuant to Article 53 of the Mortgage and Property Registry Act, liens have a preferential ranking according to their dates of presentment. P.R. Laws Ann. T. 30 § 2256. This article incorporates the *prior in tempore, potior in iure* legal maxim (first in time, first in right). Therefore, the recording of subsequent liens only creates "junior" claims as to the prior or more "senior" claims, i.e. the filing of a subsequent lien by an already existing lien holder does not toll or extend the attachment of any prior lien.

By March 23, 2005, Real Properties numbered 18455, 25537, 25539, 25538 and 24093 (Counts I, II, III, V, and VI, respectively) had liens or inscriptions in the property registry, whereas Real Property numbered 26489 (Count IV) had none. Thus, the filing of a tax lien on March 23, 2005, granted Hacienda a "junior lien" as to Counts I, II, III, V, and VI and a priming lien upon Count IV. Subsequent liens were filed by the SIFC and the IRS before Hacienda filed another lien.

Tax liens are valid for a period of six (6) years as evidenced by 30 L.P.R.A. § 2468 which states in relevant part that "[p]roperty Registrars shall cancel notations of tax embargoes six years after the date of the respective entry, at the request of a party, by notarized affidavit." This court agrees with Debtor as to the nature of this six-year term. Debtor argues that "prescription requires a legal relationship between a debtor and a creditor as there are two separate patrimonies (or estates). Industrial Equip. Corp. v. Builders Inc., 108 D.P.R. 290, 297 (1979)….Whereas caducity time limitations occur when optional rights are involved, where a statute states a term for a party to execute a specific act that does not require a credit transaction." Given the nature of the tax embargo, "only Hacienda, as the lien holder, has the power and the option to execute and foreclose on the lien." Dkt. No. 68 at p. 7. Consequently, the statute of limitations of tax embargoes must be classified as a "caducity" term, meaning that it "(1) extinguishes the obligation once the period has elapsed; (2) admits no interruption; (3) can be raised as a defense by the court *ex-officio judicis*; and (4) begins running irrespective of whether the potential plaintiff has discovered the facts needed to support the claim." Fed. Deposit Ins. Corp. v. Arrillaga-Torrens, 212 F. Supp. 3d 312, 333 (D.P.R. 2016) (citing Ruiz v. Ambush, 25 F. Supp. 3d 211, 214 (D.P.R. 2014)).

As a result, Hacienda's Count IV priming tax lien filed March 23, 2005, does not allow any tolling and as such prescribed on March 23, 2011. Because Hacienda did not file another lien until after the SIFC and the IRS filed theirs, as per the rules of "race-notice" statutes, Hacienda's priming lien lost its status, and the next in line becomes the priming lien holder – the IRS.[1]

In addition, given that Real Property numbered 26489 only has a market value of $25,000 and

---

[1] The SIFC had a senior lien over the IRS until this Court voided their lien. See Dkt. No. 38.

the IRS' lien is for an amount higher than $25,000, Hacienda is wholly unsecured and this court GRANTS Debtor's request to strip off Hacienda's tax liens over Real Property numbered 26489 (Count IV).

Third, as to Hacienda's collection period's statute of limitations, it is important to reiterate the genesis from which all terms begin to count – the assessment:

> [T]he amount of taxes or levies set forth under any part of this Code shall be assessed within four (4) years after the date the tax return or declaration was filed, and no court proceedings without assessment for the collection of such taxes shall be initiated after the expiration of such term.

§ 33005 Limitations for assessment and collection, 13 L.P.R.A. § 33005

After the final assessment, Hacienda is allowed a period of seven (7) years to demand payment:

> When the assessment of any taxes imposed by this Code has been made within the prescriptive term properly applicable thereon, such taxes may be collected by means of demand for payment proceedings or court proceedings, insofar as these are filed:
>
> (A)Within seven (7) years following the date of tax assessment.

§ 33006 Exceptions to the prescriptive term, 13 L.P.R.A. § 33006

Nonetheless, no collection effort can be carried out after ten (10) years of the final assessment:

> [T]he Secretary, on his/her own initiative or by request of the taxpayers, shall proceed to eliminate from the files of the Department, and shall be barred to collect, any debts imposed under this Code or preceding laws of which ten (10) years have already elapsed from the date of their assessment.

§ 33006 Exceptions to the prescriptive term, 13 L.P.R.A. § 33006

The exact date(s) of the assessment(s) were not included by Debtor or Hacienda in their

10

filings. Without these dates, the court is unable to determine whether or not Hacienda's claims are partially time barred. That being a material fact in dispute, the court orders an evidentiary hearing as to this issue only.

### B.     IRS

The IRS's arguments in its *Motion for Partial Summary Judgment* [Dkt. No. 48] are two fold (1) this court lacks jurisdiction to adjudicate the issue at bar, (2) stripping down or stripping off the liens of the United States prior to confirmation is not permitted by the Code in chapter 11 cases.

In promoting the argument for this court's lack of jurisdiction to modify the United States' security interests prior to confirmation, the IRS assumes "that the Debtor seeks to strip the liens pursuant to 11 U.S.C. § 1123(b)(5)" and that as a result, Debtor cannot sue the IRS because "the United States has not waived its sovereign immunity with respect to § 1123 of the Bankruptcy Code". Dkt. No. 48, p. 2. As a general rule, "sovereign immunity is a jurisdictional bar to suit against the United States." In re Knapp, 294 B.R. 334, 336 (W.D. Wash. 2003) (citing Russell v. United States Dep't of the Army, 191 F.3d 1016, 1019 (9th Cir.1999)).

Furthermore, and regardless of this court's determination on jurisdiction, the IRS argues that this court should deny Debtor's request for relief based on the fact that a federal tax lien is a unitary lien that cannot be voided based on the value of individual pieces of collateral and on precedent prohibiting lien-stripping until authorized by the Code.

To these allegations, Debtor responded by filing its *Opposition to the United States Motion for Partial Summary Judgment* [Dkt. No. 65]. Debtor argues:

11

1. The Bankruptcy Court's power to strip secured creditors liens comes from Section 506 of the Bankruptcy Code of which sovereign immunity is specifically abrogated in Section 106(a). Nonetheless, even if we assume, *arguendo*, that Section 506 is not included in 11 U.S.C. §106(a), the United States still waived its sovereign immunity by filing a proof of claim.

2. The United States' "unitary" tax lien can be divided, and "detached" from specific property in accordance to Section 506 of the Bankruptcy Code; and the recording of a lien over real property, does not extend to personal property as the IRS contends.

3. Section 506(d) allows courts to either strip down or strip off liens; and (2) nothing in Titles 11 or 26 of the U.S. Code, bars courts from stripping liens off (or down) specific property when no equity is available.

To Debtor's opposition, the IRS further replied in their *Opposition to Debtor's Motion for Summary Judgment and Reply on United States' Motion for Summary Judgment* [Dkt. No. 69]:

1. Sections 506 and 502 do not authorize pre-confirmation lien stripping. And with respect to the only operative provision applicable to the Debtor's request, Section 1123, the United States has not waived its sovereign immunity….Accordingly, sovereign immunity has not been waived, and the Bankruptcy Court lacks jurisdiction at this time to modify the rights of the United States pursuant to § 1123(b)(5).

2. A statutory lien in favor of the United States arises automatically when a taxpayer fails to pay a tax owed, and attaches to all property and rights to property, whether real or personal, belonging to the taxpayer.

3. The Debtor argues that "the combined operation of Section 506(a) and (d)" permits pre-confirmation lien stripping. But, this is the precise argument that the Supreme Court rejected in <u>Dewsnup v. Timm</u>, 502 U.S. 410 (1992)….The "operative sections" of Chapter 11 do not permit lien stripping prior to confirmation. Section 1123(b)(5) permits avoidance only at the time of confirmation.

This court has jurisdiction over core proceedings, which include the "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(2)(K). "'Validity' means the existence or

12

legitimacy of the lien itself, 'priority' means the lien's relationship to other claims to or interests in the collateral, and 'extent' means the scope of the property encompassed by or subject to the lien...." In re King, 290 B.R. 641, 647 (Bankr. C.D. Ill. 2003). This being a proceeding where the extent and priority of liens is being contested, this court finds itself in the position of having jurisdiction over the present adversary proceeding. The court does not find IRS' argument about the court's lack of jurisdiction based on their sovereign immunity compelling. The United States waived its sovereign immunity by filing  proof of claim number 4. Section 106(b) of the Bankruptcy Code states:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

The operative section allowing Debtor to request liens to be stripped from the estate's property is Section 506 of the Code, for which the IRS' sovereign immunity is abrogated. See 11 U.S.C. § 106. This court acknowledges that it is Debtor's option to "cram down" its creditors through the plan, as argued by the IRS. See 11 USC § 1123(b)(5). However, this court does not find any statutory authority or case law making this latter option mandatory. Thus, there is no impediment to request liens to be stripped through Section 506 via the present adversary proceeding.

Having established this court's jurisdiction over the present matter, the court now moves to explain the lien voiding powers provided by the Code:

> The statutory basis for "stripping off" a lien arises from the combination of *11 U.S.C. §§ 506(a)* and *(d).*[3] First, by operation of *Section 506(a)* an under-secured creditor's allowed claim is bifurcated into secured and unsecured portions. Then, with certain exceptions not applicable here, pursuant to *Section 506(d)* the lien securing the claim is voided to the extent that it is not an allowed secured claim,

effectively stripping the lien "off"        to        that        extent.

In re Johnson, 386 B.R. 171, 173–74 (Bankr. W.D. Pa. 2008), aff'd sub nom. I.R.S. Dep't of Treasury of U.S. v. Johnson, 415 B.R. 159 (W.D. Pa. 2009)

Moreover, this general principle is not precluded by the decision in Dewsnup, as the IRS claims

Section 1123(b)(5) represents an explicit Congressional approval of lien stripping in Chapter 11 cases, subject only to the home mortgage exception. What is most significant for present purposes is the timing of the enactment of the Bankruptcy Reform Act of 1994 which included this provision when it was passed two years after *Dewsnup* was decided. To hold that Dewsnup prevents lien stripping in Chapter 11 cases would be to ignore this clear Congressional intent, something the Court cannot do.

Id.

The aforementioned case clearly rejects Dewsnup and allows for lien stripping in chapter 11 bankruptcy cases. The decision in Dewsnup was motivated by one principle: to avoid the potential windfall on a debtor as a result of a price increase on the property after the bankruptcy filing. However, under reorganization schemes, such as Chapter 11,

any lien stripping is coupled with payments under the plan and ownership of the property being vested in the debtor. This has led courts and commentators to note that creditors in reorganization cases thus receive something in exchange for the voiding of their liens, *i.e.,* payment obligations under a plan of reorganization, so that principle of *Dewsnup* is not violated.

Id.

Nevertheless, even when the general rule allows for the stripping of under-secured liens in chapter 11 cases, as the IRS suggests in their *Motion for Partial Summary Judgment*, IRS tax liens can be unitary. Unitary or blanket liens cannot be voided based on the value of individual pieces of collateral. A unitary or blanket lien is defined as a lien indivisible in nature that cannot be broken

14

down on a property-by-property basis that attaches to both real and personal property. They are regarded as "inviolable so long as there is equity value in any of the collateral subject to the lien." Id. 26 U.S.C. § 6321 provides for their existence:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

However 26 U.S.C. § 6323 imposes requirements for a tax lien to obtain such status. Said section of the United States Internal Revenue Code (hereinafter, "IRC") establishes:

> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lien, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

Subsection (f) of the aforesaid IRC section details:

> (f) Place for filing notice; form.--
>     (1) Place for filing.--The notice referred to in subsection (a) shall be filed—
>
>         (A) Under State laws.--
>             (i) Real property.--In the case of real property, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; and
>             (ii) Personal property.--In the case of personal property, whether tangible or intangible, **in one office within the State** (or the county, or other governmental subdivision), **as designated by the laws of such State**, in which the property subject to the lien is situated, **except that State law merely conforming to or reenacting Federal law establishing a national filing system does not constitute a second office for filing as designated by the laws of such State**; or

15

(B) With clerk of district court.--In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, **whenever the State has not by law designated one office which meets the requirements of subparagraph (A)**; or

(C) With Recorder of Deeds of the District of Columbia.--In the office of the Recorder of Deeds of the District of Columbia, if the property subject to the lien is situated in the District of Columbia. [emphasis ours].

No lien filed by the IRS meets the above stated criteria. They were either filed at the Property Registry or at the United States District Court for the District of Puerto Rico (hereinafter, "USDC"). In no instance does the IRS provide evidence of complying with section 6323(f)(1)(A)(ii) or subsection 6323(f)(1)(B).

As a result, the IRS' liens attach only to real property and never obtained the unitary or blanket lien status the IRS claims. Without said status, the court sees no merit in any further analysis of IRS' claim. The court orders the stripping down of the $31,961.45 tax lien filed May 14, 2007, to $25,000, and the stripping off of all other liens filed after the referenced date, because they are wholly under secured.

**IV. Conclusion**

It has been a long held pillar of the Code to provide a procedure through which debtors can come out of bankruptcy with a "clean slate" without the pressures of pre-existing debt. Many times, the proper mechanism to accomplish said goal is by lien stripping. That is the case with Debtor in the adversary at bar. Not removing all unsecured liens from Debtor's Real Properties would certainly go against the "clean slate" principle envisioned by the Code.

WHEREFORE, it is hereby ORDERED, ADJUDGED and DECREED that the relief requested by the Debtor in his Motion for Summary Judgment is GRANTED, in part.

It is FURTHER ORDERED that:

1. Hacienda's and the IRS' liens upon Land Parcels 18455, 25537, 25539, 25538 and 24093 (Count I, Count II, Count III, Count V, and Count VI) are declared NULL, VOID and REMOVED from said Real Properties. Hacienda's and the IRS' liens upon these Real Properties are wholly under secured.

2. Hacienda's priming lien upon Real Property numbered 26489 (Count IV) is declared NULL, VOID and REMOVED from said Real Property as the lien's attachment period has elapsed.

3. The IRS' $31,961.45 tax lien filed May 14, 2007, is the priming lien upon Real Property numbered 26489 (Count IV), and is further stripped down to $25,000, the collateral's uncontested value.

4. The Clerk shall schedule a final pre trial hearing as to Count VII of the Complaint as to the partial disallowance of Hacienda's claim number 7-1.

SO ORDERED

San Juan, Puerto Rico, this 29th day of December, 2017.

Brian K. Tester
U.S. Bankruptcy Judge

17